JS 44
(Rev. 3/99)

~~ORIGINAL~~

# CIVIL COVER SHEET

AUG - 2 2002

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Jim Glaza, M.F. Long II, John H. Towers, William Edwards III, Vicky Robinson, Vic Seeber

## DEFENDANTS

Rushmore Financial Group, Inc., Gale C. Tinsley, John A. Vann, David C. Dema, James N. Fehlesson, W. Thomas Fraser III, Timothy J. Gardiner, & Mark R. Rutledge.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
COLORADO SPRINGS.
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Dallas.
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
The Law office of James R. Marlon
3000 Carlisle, Ste 102
Dallas, TX 75204 214 953-3100

ATTORNEYS (IF KNOWN)

3-02CV 1638L

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | **PERSONAL INJURY** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury — Med. Malpractice | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | ☐ 365 Personal Injury — Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | **PERSONAL PROPERTY** | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 370 Other Fraud | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 371 Truth in Lending | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 380 Other Personal Property Damage | | | |
| ☐ 245 Tort Product Liability | ☐ 385 Property Damage Product Liability | | | |
| ☐ 290 All Other Real Property | | | | |
| **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | |
| ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 442 Employment | **HABEAS CORPUS:** | | | |
| ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 750,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE                                DOCKET NUMBER

DATE ~~08/01/02~~ 07/28/02

SIGNATURE OF ATTORNEY OF RECORD James R. Marlon

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

3-02CV 1638L

JIM GLAZA, M.F. LONG II, JOHN H. TOWERS,
WILLIAM EDWARDS III,
VICKY ROBINSON, VIC SEEBER

**PLAINTIFFS**

vs.

RUSHMORE FINANCIAL GROUP, INC..,
GAYLE C. TINSLEY, JOHN A. VANN, DAVID C.
DEMAS, JAMES M. FEHLEISON, W. THOMAS
FRASER III, TIMOTHY J. GARDINER, & MAX R.
RUTLEDGE

**DEFENDANTS**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

NORTHERN DISTRICT OF TEXAS

**FILED**

AUG _ 2 2002

CLERK, U.S. DISTRICT COURT
By_____
Deputy

---

## <u>PLAINTIFFS' ORIGINAL PETITION</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs bringing this their Original Petition complaining of

Defendants, and for causes of action would respectfully show the Court the following:

# I.

## PARTIES AND JURISDICTION

### PARTIES

#### A.    PlAINTIFFS

1.    Mr. Jim Glaza brings this claim individually. *Mr. Glaza is a citizen of the State of Colorado.*

2.    Mr. M.F. Long II brings this claim individually. *Mr. Long is a citizen of the State of Texas and resides in around the city of Dallas.*

3.    Mr. John H. Towers brings this claim individually. Mr. *Towers is a citizen of the State of Texas and resides in around the city of Dallas.*

4.    Mr. Vic Seeber brings this claim individually. Mr. Seeber is a citizen of State of Oregon.

5.    William Edwards III brings this claim individually. *Mr. Edwards III is a citizen of the State of Texas and resides in around the city of Dallas.*

6.    Vicky Robinson brings this claim individually. *Ms. Robinson is a citizen of the State of Texas and resides in and around the city of Dallas.*

#### B.    DEFENDANTS

1.    Rushmore Financial Group Inc. is a financial services holding company that is, inter alia, the parent company of a national broker-dealer and NASD member

based in Dallas, Texas.  *Defendant has its principal place of business in the state of Texas and is located at:*

**One Galleria Tower**
**Rushmore Financial Group**
**13355 Noel Drive, Suite 300**
**Dallas,  Texas 76240**
**T      972-308-8811**
**F      972-364-4723**

2.      Messrs. Gayle C. Tinsley, John A. Vann, David C., Demas, James M. Fehleison, W. Thomas Fraser III, Timothy J. Gardiner, And Max R. Rutledge  are and were at all relevant times, officers and directors of Respondent Rushmore Financial Group.  These defendants reside in or around the city of Dallas.  *Service of process may be made on these defendants according to the laws of the State of Texas by serving Mr. D.M. MOORE, JR., (a/k/a "Rusty" Moore) located at the address noted immediately above. Mr. Dewey Malone Moore, Jr. is identified by the Texas Secretary of State as the agent of record for purposes of service of process for all Defendants..*

## II.

## JURISDICTION

1.      The Court has <u>diversity jurisdiction</u> because the parties, including opposing parties, are citizens of several states including Colorado and Texas.  Furthermore, the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.  Notably, Defendant Rushmore Financial Group maintains its principal place of business in the State of Texas.  Under 28 U.S.C. § 1332, § 1441, a corporation shall be deemed a citizen in the state where it has its principal place of business.

## III.


## STATEMENT OF FACTS

1.      Recently, Defendants unilaterally terminated without prior notice or indication, several of the registered representatives associated with Rushmore. Notably, the gross commissions collectively produced by the terminated registered representatives comprised approximately sixty percent (60%) of the gross revenues of Rushmore.

2.      Given the foregoing effect upon Rushmore's cash-flow and the consequent potential adverse affect upon their net capital requirements, imposed pursuant to industry regulation and federal legislation, and ability to remain in business, all Defendants, particularly the directors of Rushmore, no doubt were cognizant of the catastrophic financial repercussions of their massive and unilateral termination of their "producing" sales force.

3.      Apparently already experiencing exigent financial circumstances, and since the lay-off, Defendants have wrongfully withheld compensation and contractual obligations owed to the Plaintiffs.  Despite repeated attempts by Plaintiffs to secure receipt of their compensation and to compel Defendants to honor certain contractual obligations, Defendants have and continue to decline to disburse the Plaintiffs' compensation checks paid twice per month and established as a course-of-conduct that Defendants have ratified and Plaintiffs have relied upon to their detriment.

4.     To summarize, Defendants contractually owe the Plaintiffs, respectively, the following:

1.     <u>Claimant Glaza:</u>

i.      Compensation checks representing without limitation net commission revenue generated of $40,000.00;

ii.     Mutual fund, annuity and insurance "trailers" in the amount of $10,000.00 but continually increasing.

2.     <u>Plaintiffs M. F. Long II, William Edwards III, Vicky Robinson</u>

i.      Compensation checks representing without limitation net commission revenue generated of $26,000.00;

ii.     Mutual, annuity and insurance "trailers" of an indeterminate amount but continually increasing.

iii.    Regarding Claimant Long, one-half the remaining amount due pursuant to executed pay-out agreements arising from two arbitration awards totaling $27,000.   In other words, the remainder due pursuant pay-out agreement is $54,000 and thus, Defendants' are obligated to pay one half of this amount, specifically $27,000 **[See Exhibit "B" enclosing Rushmore Financial Group, Inc.'s asset purchase agreement, providing for assumption of one-half liability for certain specific arbitration awards relating to certain registered representatives].**   *. Significantly, in light of Defendants' breach of this obligation, Claimant Long seeks, in addition to legal relief, the equitable remedy of the present*

*value of the outstanding balance owed by Defendants in connection with their*
*assumption of joint and several liability and contractual commitment to pay one half*
*of the periodic "pay-out's" associated with the referenced arbitration agreements.*

*Claimant will respectfully request that the Panel issue an order mandating*
*immediate pay-out by Respondent Rushmore of the present value of the remaining*
*periodic payments it is contractually obligated to pay. Absent such relief, Claimant*
*will be forced to make full and complete payments to honor arbitration awards that*
*given that that underlying award imposed joint and several liability upon Claimant*
*and an entity from which Respondent Rushmore purchased and pursuant to such*
*purchase agreement, agreed in writing to assume one half payment of such*
*outstanding arbitration awards.*

      3.    <u>Claimant John H. Towers</u>

      i.    Compensation checks representing without limitation net
commission revenue generated of $58,000;

      ii.    Mutual, annuity and insurance "trailers" of an
indeterminate amount but continually increasing.

      iii.    One-half the remaining amount due pursuant to executed
pay-out agreements arising from two arbitration awards totaling $12,500. In other
words, the remainder due pursuant pay-out agreement is $25,000 and thus,
Defendants' are obligated to pay one half of this amount, specifically $12,500.
*Significantly, in light of Defendants' breach of this obligation, Claimant seeks, in*
*addition to legal relief, the equitable remedy of the present value of the outstanding*
*balance owed by Defendants in connection with their assumption of joint and several*

*liability and contractual commitment to pay one half of the periodic "pay-out's" associated with the referenced arbitration agreements.*

*Claimant will respectfully request that the Panel issue an order mandating immediate pay-out by Respondent Rushmore of the present value of the remaining periodic payments it is contractually obligated to pay. Absent such relief, Claimant will be forced to make full and complete payments to honor arbitration awards that given that that underlying award imposed joint and several liability upon Claimant and an entity from which Respondent Rushmore purchased and pursuant to such purchase agreement, agreed in writing to assume one half payment of such outstanding arbitration awards.*

    4.   <u>Claimant Vic Seeber</u>

    i.   Compensation checks representing without limitation net commission revenue generated of $13,000;

    ii.   Mutual fund, annuity and insurance "trailers" of an indeterminate amount but continually increasing.

    5.   Despite the foregoing, Plaintiffs in good faith collectively and individually attempted to obtain their payment checks, following failure to receive payment in the normal course of business. In response, they were advised by Defendants' in-house "yes-man", compliance officer Tom Fincher, that Defendants' maintained a "separate" policy for paying terminated associated registered representatives that was distinct from their normal pay practice of issuing payment checks twice per month. Upon further questioning and request for proof of substantiating documentation, Respondent Fincher proffered additional, dilatory

"double-talk". Significantly, Plaintiffs' contracts contain no provision enabling Defendants to depart from their prior course of conduct in issuing payment checks. Moreover, because Defendants drafted the subject employment contract, principles of contract construction and interpretation require that any ambiguities concerning the contract be interpreted against the party responsible for drafting such document.

6.      Plaintiffs, as anybody similarly situated would, need their due compensation. Compounding the failure of Defendants' to issue their checks is the fact that Plaintiffs are all self-employed small business-persons with responsibility to provide for their own employees in addition to providing for their own families. Defendants' misconduct has had a foreseeable adverse impact upon Plaintiffs' business concerns and viability and constitutes tortious interference with business relations. Accordingly, Defendants are responsible for consequential damages stemming from their misconduct.

7.      Plaintiffs and the undersigned counsel have information and belief that Defendants are proactively attempting to sell the remaining assets of the Respondent broker-dealer Rushmore. In fact, the attached press release recently issued by Respondent Rushmore and approved by Rushmore's directors, clearly indicates their intention to liquidate the remaining assets of Rushmore. **[See Exhibit "B"].**

8.      Ultimately, the "real story" giving rise to the instant case is that Rushmore is desperately positioning the company to sell what it apparently considers its "crown-jewel": its on-line trading division and platform named RushTrade that only generates about $50,000.00 in monthly gross revenue and cannot even cover Defendants' fixed costs.

9.     Despite investing millions of dollars in this division, at the expense of and to the detriment to its "cash-cow" and "core-business" of its traditional stock brokerage division and associated sales force that had been generating $500,000.00 gross revenue monthly, Defendants have collectively decided to implement an "exit strategy" impliedly acknowledging the mistake of "betting-the-ranch" upon RushTrade.  Apparently caught up in the hubris of the late 1990's day-trading and on-line trading Wall-Street ethos, Defendants apparently believed that they could "sell" this pipe-dream to investing America, notwithstanding that they lacked the financial resources and were precariously subject to technological obsolescence vis-à-vis their well capitalized competition such as E-Trade.  [Indeed, following Defendants press release that it was, circa 1999, establishing a proprietary on-line trading platform, its NASDAQ-listed stock price rocketed from about $2 per share to $14 per share within days.

10.     Presumably, Defendants believed that they could persuade their then current sales force to convert their clients to RushTrade, as Merrill Lynch has unsuccessfully attempted to do.  To the point, now having unilaterally terminated and entered into an agreement to sell their remaining sales force, Defendants are stuck with RushTrade and are moving as quickly to sell it before its technology becomes leap-frogged by better capitalized industry competitors.

11.     In fact, to this end, Defendants have hired an Israeli "consultant" who has allegedly invested in RushTrade and aspires to purchase the platform for

purportedly $2,000,000.00 and integrate it into his California-based "school" that instructs participants on how to "day-trade".

12.     Regardless of the merits or lack thereof of Defendants' foray into on-line trading, the fact remains, that Plaintiffs, first and foremost, among other former and current corporate constituents, are being forced to pay-the-price for Defendants business errors to the extent that Defendants are wrongfully withholding in excess of $100,000 of compensation owed to Plaintiffs.  While the decision to enter and exit any business of Defendants' is necessarily approved by its respondent directors and thus, from a shareholder perspective, Defendants' board is inoculated from liability for its ineptitude, the Board is not and cannot escape liability for aiding and abetting the foregoing alleged misconduct perpetrated upon Plaintiffs.

13.     Without question, if the respondent directors were adhering to their fiduciary duty to apprise themselves of the operations of respondent Rushmore, they would no doubt know or have a duty to inquire and know, that Rushmore could not stay afloat without wrongfully converting Plaintiffs' compensation.  Consequently, Plaintiffs categorically and unequivocally make clear that they are seeking a finding from the Panel imposing individual, primary, joint and several liability against all Defendants, particularly including the respondent board members whose collective complicity and duplicity cannot be denied and will be incontrovertibly established at the final expedited hearing.

# VI.

# LEGAL CLAIMS

14.     The foregoing activity caused Plaintiffs damage. Based upon such facts, the causes of action which Plaintiffs brings against Defendants include, but are not limited to, the following:

(1)     violations of the Texas Deceptive Trade Practices Act;

(2)     negligence/gross negligence/breach of industry standards;

(3)     breach of contract;

(4)     breach of duty, fiduciary and otherwise;

(5)     common law fraud - misrepresentations and omissions; constructive fraud;and fraudulent concealment;

(6)     *respondeat superior*;

(7)     controlling person liability;

(8)     aiding and abetting liability;

(9)     agency liability - express & apparent authority;

(10)    unjust enrichment;

(11)    negligent infliction of emotional distress;

(12)    anticipatory breach of contract;

(13)    extortion & coercion; and

(14)    tortious interference with business relations.

1.    **Violations of the Texas Deceptive Trade Practices Act**

15.     Defendants violated the Texas Deceptive Trade Practices Act ('DTPA') by providing "services" to Plaintiffs that included 'false, misleading, or deceptive acts or practices," as those terms are defined under DPTA § 1 7.46(a), in that Defendants made numerous material misstatements and omissions prescribed under DTPA §§ 17.26(b)(5), -(7) and -(23). Defendants' conduct was committed knowingly, thus entitling Plaintiffs to three times their actual damages. Plaintiffs also are entitled to recover reasonable attorneys' fees upon successfully proving their DTPA claims.

2.      **Negligence/Gross Negligence/Breach of Industry Standards**

16..    The industry standard of care is set forth by the rules of the NASD, the NYSE, and the SEC; federal and state statutes, including the Texas Securities Act and the Penny Stock Reform Act; relevant case law; and the brokerage firms' own compliance manuals. Defendants are obligated to provide Plaintiffs and Plaintiffs are entitled to rely upon Defendants for competent, professional securities services in accordance with those industry rules, regulations, customs and practices. By their conduct as outlined above, Defendants failed to abide by many of these rules including but not limited to the following:

(a)     Article III, Section of the NASD Rules of Fair Practice ("High Standards of Commercial Honor/Equitable Principles of Trade");

(b)     Article III, Section 18 of the NASD Rules of Fair Practice ("Manipulative,     Deceptive or Fraudulent Devices or Contrivances").

(c)     Rule 401 of the NYSE ("Good and Ethical Business Practices");

(d)     Article III, Section 27 of the NASD Rules of Fair Practice and Rule 405 of the NYSE ("Supervision");

(e)     The statutory citations referenced herein; and

(f)     Breaches of the standards of conduct presumably set forth in Defendants' compliance manuals.

17.     Plaintiffs asserts that Defendants' conduct was committed knowingly and with the intention to deceive.  In the alternative, however, Defendants acted with reckless disregard for the rights and welfare of Plaintiffs and were grossly negligent in failing to prevent the complained of conduct.

3.     **Breach of Contract**

18.     Defendants were obligated to provide Plaintiffs' with compensation payments, including without limitation, commission payments and mutual fund trailers, and assumed liabilities arising from Defendants' purchase of Dominion Institutional Services and if applicable any related entities.  Such liabilities included the contractual duty to assume joint and several liability for payment of arbitration awards against certain Plaintiffs. While such Plaintiffs have continued to pay their half of such awards in the form of periodic payments, Defendants have failed to make their half of such payments pursuant to their contractually agreed upon duty.

4.     **Anticipatory Breach of Contract**

19.     Defendants were obligated to provide Plaintiffs' compensation payments, including without limitation, commission payments and mutual fund trailers, and assumed liabilities arising from Defendants' purchase of Dominion

Institutional Services and if applicable, any related entities.  Such liabilities included the contractual duty to assume joint and several liability for payment of arbitration awards against certain Plaintiffs.  While such Plaintiffs have continued to pay their half of such awards in the form of periodic payments, Defendants have failed to make their half of such payments pursuant to their contractually agreed upon duty.  To date, Defendants continue to wrongfully withhold monies owed to Plaintiffs and to honor their agreements concerning assumption of partial liability for certain outstanding arbitration awards.

5.      **Breach of Fiduciary Duty and Breach of Duty**

20.     Defendants had a fiduciary duty to exercise the utmost good faith in dealing with Plaintiffs, including but not limited to the following:

(a)     The duty to recommend a security only after studying it sufficiently to become informed as to its nature, price and financial prognosis;

(b)     The duty to inform the customer of the risks involved in purchasing or selling a       particular security;

(c)     The duty to refrain from self dealing;

(d)     The duty not to misrepresent any fact material to the transaction; and

(e)     The duty to act in the best interests of Plaintiffs.

6.    **Fraud**

20.    Defendants actions that Plaintiffs reasonably relied upon and have suffered consequential damages thereby constitute fraudulent conduct that is continuing.

7.    **Respondeat Superior**

21.    At all times, Respondent and its employees agents were acting in the course of their employment at Respondent Rushmore. If the Panel finds that such respondent Rushmore is liable to Plaintiffs for their wrongful conduct, then the individual respondent agents, officers and directors of Respondent Rushmore are likewise liable under the doctrine of *respondent superior* ('let the master answer"). This doctrine also applies to the liability of all Respondent's employees.

8.    **Controlling Person Liability**

22.    Respondent Rushmore, is a controlling person as that term is defined in 15 U.S.C. 78t(a) and Tex. Rev. Civ. Stat. Ann. Art. 581-33f.  Respondent Rushmore and its Respondent managers, agents, officers and directors directly or indirectly controlled the subject Respondent. Similarly, Respondent Rushmore directly or indirectly controlled the Respondent managers. Accordingly, Respondent Rushmore and the individual Defendants are liable jointly and severally to Plaintiffs for the losses created by their wrongful conduct.

9.    **Aiding and Abetting Liability**

23.    Respondent Rushmore is liable as an aider and abettor of the securities law violations of its agents, pursuant to Tex. Rev. Civ. Stat. Ann. Art. 581-33(F)(2). Respondent Rushmore and its managers, agents, officers and directors are likewise liable as an aider and abettor of the violations of its principals. These Defendants substantially assisted in the wrongdoing through either overt acts, omissions, or through their failure to supervise the persons assigned to execute various responsibilities in connection with operating respondent Rushmore.  This applies to persons with both apparent and express authority to do so, including without limitation, "consultants" retained by Defendants

10.    **Failure to Supervise**

23.    Respondent Rushmore, intentionally, recklessly or  negligently failed to maintain and enforce a proper system of supervision and internal control over the managers, agents, officers and directors, officer under their tutelage.  Such breach of duty proximately caused damages to Plaintiffs, for which Plaintiffs now seek to recover.

11.    **Agency Liability - Express & Apparent Authority**

24.    During the time of the acts of Respondent and its the managers, agents, officers and directors that harmed Plaintiffs, each Respondent had actual and apparent authority to represent the other. The performance of any and all such acts by

Respondent's agents and principals caused damages to Plaintiffs. Accordingly, under agency-law, they are all liable for each other's misconduct.

12.   **Unjust Enrichment**

25.   Through their wrongful acts and self-dealing, Defendants were unjustly enriched by their wrongful receipt and retention of profits, commissions, mark-ups, mark-downs, fees and/or spreads, and fund trailers. Furthermore, by failing to honor their contractual commitment to pay half of several outstanding arbitration awards, Defendants have avoided liabilities that certain Plaintiffs must now fully be responsible for.


13.   **Negligent Infliction of Emotional Distress**


26 .   Defendants' wrongful acts and breaches of duty directly and proximately caused Plaintiffs to experience emotional distress with manifestations including without limitation: generalized anxiety, difficulty sleeping, cardiovascular irregularities, and overall fear during a time that should otherwise be his "golden years".

14.   **Promissory Estoppel, Detrimental Reliance, Waiver and Ratification**

27.   Defendants, by virtue of their course of conduct and through its managers, agents, officers and directors, concerning adherence to prior regular issuance of payment checks and  payment of their half of certain arbitration awards, **"unilaterally waived"** their right to rescind or abrogate such agreements

28.    Moreover, Defendants by their course of conduct **"ratified"** the practice of providing Plaintiffs with regular compensation checks and payment of their share of certain arbitration awards and as such, are promissorily estopped (**see contract doctrine of estoppel**) from unilaterally violating such agreements because Plaintiffs have relied to their detriment by expecting Defendants' to continue to honor their contractual and ethical duties.

15.    **Extortion & Coercion:**

29.    Defendants, by and thru their authorize agents have attempted to compel thru economic duress, Plaintiffs to execute contracts, verbal and otherwise, substantially waiving and relinquishing their legal rights in connection with this matter.  In other words, Defendants have attempted several times to cause Plaintiffs to accept much less money under unacceptable terms and conditions than they are legally entitled to immediately.

16.    **Tortious Interference With Business Relations**.

30.    In addition to the foregoing alleged facts, Respondents have cause and continue to cause Claimants, most of whom are self-employed business persons, pecuniary damage.  Respondents have also engaged in wrongful conduct, including without limitation, refusing to execute "block-transfers" and substantially precluded Plaintiffs during certain relevant times, from contacting and executing securities transactions on behalf of their client.

**VII.**

## DEMAND FOR RELIEF

31.     Based upon the foregoing, Plaintiffs demands judgment against the Defendants jointly and severally and in an amount in excess of their actual losses. **Plaintiffs further request a jury trial.**

32.     As a direct and proximate result of the wrongful conduct of Defendants as described above, Plaintiffs have been compelled to retain the undersigned counsel to protect their rights, and to pay him a reasonable fee for his services, which Plaintiffs seek to recover herein pursuant to Section 38.001 of the Tex. Civ. Prac. & Rem. Code, the Tex. Bus. & Comm. Code Section 27.01, the DTPA, and other applicable law.

### Interest

33.     Plaintiffs request that the Panel award them pre-judgment and post-judgment interest at the maximum rate allowed by law.

### Costs

34.     Plaintiffs requests that the Court award them their costs and expenses of pursuing this arbitration claim, including without limitation, attorney fees, expert witness fees and filing fees.

Respectfully submitted,
THE LAW OFFICE OF JAMES R. MARLEN
BY:

James R. Marlen
Texas Bar No. 00794915
District of Columbia Bar No. 458330
3000 Carlisle, Suite 102
Dallas, Texas 75204
(214) 953-3100 Telephone
(214) 953-3190 Telecopier

ATTORNEY FOR PLAINTIFFS